IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRUCE SLATE, ) | |
| ) | |
|    Petitioner, ) | Case No. CV 05-530-S-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
|    Respondent. ) | |
| _____) | |

Currently pending before the Court is Bruce Slate's Petition for Review seeking review of the final decision of Respondent denying his claim for Title II Social Security disability benefits. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Bruce Slate ("Petitioner" or "Claimant") applied for a period of disability and disability insurance benefits under Title II of the Social Security Act alleging disability beginning March 1, 2004 (amended date).[1]  (AR 17).  Petitioner's application was denied

---

[1] It was during the hearing that Petitioner amended the alleged onset date from November 19, 2002 to March 1, 2004.  (AR 16).

**MEMORANDUM DECISION AND ORDER - 1**

initially and again after reconsideration, after which Petitioner filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). ALJ Kathleen H. Switzer held a hearing on February 17, 2005 at which time Petitioner testified via teleconference. Vocational expert, John F. Hurst, M.S., CRC, also testified.

At the time of the hearing before the ALJ, Petitioner was forty-six years of age with a high school education and past work experience as a ranch hand. (AR 17).

On April 22, 2005, the ALJ issued a decision denying Petitioner's claim because she concluded that considering Petitioner's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy and was therefore not under a disability as defined in the Social Security Act at any time through the date of the decision. (AR 24).

Petitioner requested the Appeals Council review the ALJ's decision. The Appeals Council denied Petitioner's request on November 14, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed this instant action. Petitioner argues that 1) the ALJ's rejection of Petitioner's testimony and allegations as not credible is not properly supported, 2) the ALJ's finding giving greater weight to the opinion of a consulting physician over the opinion of a treating physician is not properly supported, and 3) the ALJ's finding that Petitioner has the residual functional capacity to perform work identified by the vocational expert is not properly supported.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner requests that the ALJ's decision be reversed and benefits granted or, in the alternative, this matter be remanded for further consideration. *Petitioner's Brief* (Docket No. 13).

## II.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

**MEMORANDUM DECISION AND ORDER - 3**

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 4**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).  Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases."  *Id*. at 1095 (citation omitted).

The issue presented in the instant appeal is whether the Appeals Council's finding that Petitioner was not disabled is supported by substantial evidence and whether it is based on application of proper legal standards.

### III.

### DISCUSSION

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.

#### A.    Sequential Process

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is in the affirmative, disability benefits are denied.  20 C.F.R. § 404.1520(b).  In the instant action, the ALJ found that Petitioner has not engaged in substantial gainful activity since the alleged onset date.  (AR 17).

**MEMORANDUM DECISION AND ORDER - 5**

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). Here, the ALJ found that Petitioner has a central disk herniation at C6-7, minor degenerative disc disease of the thoracic spine, early degenerative disc disease with mild bulging of the lumbar spine and a thin broad based disc bulge at L5-S1, and mild to moderate carpal tunnel syndrome, impairments that are "severe" impairments as defined by the Social Security Act and Regulations. (AR 18).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the answer is in the affirmative, the claimant is disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). In this respect, the ALJ concluded that Petitioner has impairments which are severe within the meaning of the Regulations but not severe enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (AR 18).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In this respect, the ALJ concluded that Petitioner is able to perform light work with limitations, i.e., he needs the option to

**MEMORANDUM DECISION AND ORDER - 6**

alternate between sitting and standing at will, he can occasionally climb, balance, stoop, kneel, crouch, and crawl, he can do frequent but not constant handling with both hands and must avoid concentrated exposure to vibration and hazards such as machinery, heights, etc.  The ALJ found that Petitioner is able to perform a restricted range of light work.  (AR 23).

Petitioner has past relevant work as a ranch hand.  This work was semiskilled in nature and was performed at the heavy exertional level.  Given Petitioner's residual functional capacity, the ALJ found that Petitioner is unable to perform his past relevant work.  (AR 23).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, based upon the vocational expert's opinion that jobs exist in the national economy for an individual of Petitioner's age, education, past relevant work experience, and residual functional capacity, e.g., medical assembler-plastic hospital products, cashier/clerical II, and solderer-production line, the ALJ concluded that Petitioner is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  (AR 24).

**MEMORANDUM DECISION AND ORDER - 7**

### B.     Petitioner's Claims

Petitioner challenges the ALJ's rejection of his claim that he experiences disabling pain (AR 21) and his testimony as "not totally credible" (AR 25).  In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In the first stage, the ALJ must determine whether a claimant who alleges disability based on subjective symptoms has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id*.  In the second stage, if the claimant produced the required objective medical evidence, the ALJ must determine whether there is evidence of malingering.  *Id.*  If not, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." *Id*.

In this case, Respondent agrees that the "clear and convincing" standard applies to the ALJ's rejection of Petitioner's pain testimony.  *Respondent's Brief*, p. 8 (Docket No. 14).  Specifically, the ALJ determined:

> . . . [T]he claimant's testimony is inconsistent with the objective medical evidence (Exhibits 3F p.3-4, 3F p.6-7, 8F p.3-4, & 8F p.6).  Furthermore, the claimant has worked in the past with symptoms he currently alleges are disabling.  In fact, he continues to work part-time at a highly exertional level.  This is an indication that he could work full-time at a job requiring less exertion.  He also testified that he continues to look for work which demonstrates that the claimant must believe that there is work available which he could perform.  The claimant's actual activities of daily living are greater than his alleged limits.  Additionally, the claimant's testimony is

**MEMORANDUM DECISION AND ORDER - 8**

> inconsistent with the findings of the consultative examiner
> (Exhibit 8F).  Following his examination of the claimant, he
> opined that the claimant has restrictions which would allow
> him to perform a wide range of light and medium occupations
> (Exhibit 8F p.5).  Finally, the claimant's testimony is
> inconsistent with the findings of the expert medical opinions
> of the State agency (Exhibit 9F).

(AR 20).  In summary, the ALJ relied on three grounds to reject Petitioner's testimony, finding that: 1) Petitioner's continued part-time work indicates he could perform full-time work, 2) Petitioner's actual activities of daily living are greater than his alleged limits and inconsistent with the findings of an examining and a reviewing doctor, and 3) Petitioner's testimony is inconsistent with the medical evidence.  Respondent argues that these are clear and convincing reasons for rejecting Petitioner's subjective pain allegations.  *Respondent's Brief*, pp. 8-9 (Docket No. 14).

### 1. Petitioner's Part-Time Work

When assessing Petitioner's credibility, the ALJ relied on her observation that Petitioner "continues to work part-time at a highly exertional level" to conclude that he could "work full-time at a job requiring less exertion."  (AR 20; *see also* AR 19 (noting that Petitioner "is working part-time")).  However, Petitioner stopped working, even part-time, in February 2004, almost 14 months before the ALJ issued her decision.  (AR 235).  Petitioner explained at the hearing that he was terminated "[b]ecause [he] could no longer do the work that was required," "[a]nd the business expanded and they had to hire more employees . . . [and] had to cut a little bit."  (AR 235).

**MEMORANDUM DECISION AND ORDER - 9**

Respondent argues that the ALJ's error in stating that the Petitioner is currently employed part-time is harmless because her conclusion—that a person who could work part-time at a heavy exertional level could likely work part-time at light exertion—is a reasonable inference. *Respondent's Brief*, p. 9 (Docket No. 14). Significantly though, statements by Petitioner indicate that his part time work was not at a highly exertional level. When listing his work activities, Petitioner reported that his part time work involved "*very light duties* w/ my long time employer. Pick up supplies and check sickness in cattle." (AR 75) (emphasis added). Petitioner's comments at the hearing indicate that the job was rigorous when he began in 1989; however, his duties were limited starting in 2002 when he stayed at the home base operation and quit traveling to outside pastures. The work was further limited when he dropped to part-time hours in 2003. (AR 231-35). There is nothing in the record that directly contradicts Petitioner's description of the type of part-time work he performed.

Additionally, even if the ALJ made a reasonable inference from Petitioner's description of his part-time work, "[o]ccasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). It is the ability to work on a sustained basis that is under consideration. Accordingly, the ALJ's reasoning based on her belief that Petitioner was working part time at a highly exertional level at the time of her decision is not supported

**MEMORANDUM DECISION AND ORDER - 10**

by the record and, in any event, does not amount to a clear and convincing reason for rejecting Petitioner's pain testimony.[2]

## 2. Petitioner's Activities of Daily Living

The ALJ also relied on Petitioner's daily activities to reject his pain testimony; however, the ALJ simply noted that Petitioner's "actual activities of daily living are greater than his alleged limits," without explaining which activities are inconsistent or how they are inconsistent. (AR 20). Although the ALJ earlier in her decision had described Petitioner's typical day (AR 20), the decision contains no analysis of how these activities are inconsistent with Petitioner's claimed limitations. An ALJ "must identify what testimony is not credible and what evidence undermines the Petitioner's complaints"; "[g]eneral findings are insufficient." *Lester v. Chater*, 81 F.3d at 834. The ALJ did not make these specific findings here.

In addition, Petitioner's reported daily activities are not expansive. Petitioner reported that he spends four and one-half to five hours per day lying down or relaxing to relieve pain (AR 237; *see also* AR 249), he can no longer cook for himself because his

---

[2] That Petitioner testified he continued to look for work does not impact this determination. Petitioner testified that when he was terminated in February of 2004 he tried to find work but no one would hire him after he told them about his back problems. (AR 235). He also reported at the hearing that he was still looking for work but he then went on to describe his limitations. (AR 255-56). Petitioner's failed search for work that he could perform given his alleged limitations does not amount to a clear and convincing reason to reject his testimony. *See, e.g.*, *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (noting "[t]hat [petitioner] sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself").

**MEMORANDUM DECISION AND ORDER - 11**

"grip is compromised," and he needs assistance with dusting, laundry, dishes, vacuuming/mopping, yard work/gardening, (AR 84). Although Petitioner checks on his friends and animals, can vacuum for about four minutes and can weed for about ten minutes, none of these activities provide a clear and convincing reason to reject Petitioner's pain testimony. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (determining the ALJ erred in basing credibility determination on the petitioner's ability to carry out certain routine tasks where the petitioner's daily activities were actually quite limited and carried out with difficulty).

### 3. Evaluating the Medical Evidence

The ALJ's third reason for rejecting Petitioner's testimony implicates the first stage of the *Smolen* analysis, i.e., whether Petitioner has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." 80 F.3d at 1281. Even Dr. Sant, the examining doctor whose report the ALJ relied on in rejecting Petitioner's pain testimony, found that Petitioner does have "some significant underlying degenerative disease in his neck and spine" and appears to have at least mild carpal tunnel syndrome. (AR 194). Thus,

**MEMORANDUM DECISION AND ORDER - 12**

because Petitioner has produced "objective medical evidence of an underlying impairment, [the] ALJ may not reject [his] subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."[3] *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Because the ALJ did not properly rely on Petitioner's part-time work and daily activities to support her credibility determination and rejection of Petitioner's pain testimony, the ALJ's reliance on a lack of medical evidence to support Petitioner's complaints is not a sufficient basis by itself to support the rejection of Petitioner's pain testimony.

Even considering the noted inconsistencies between Petitioner's testimony and the opinions of examining and reviewing doctors as sufficient support for rejecting Petitioner's testimony, the ALJ did not address the opinion of Petitioner's treating physician when assessing Petitioner's credibility. In a letter to the Social Security office dated January 1, 2003, Petitioner's treating physician, Dr. Giffin, noted that she has treated Petitioner for his "chronic pain" complaints and reported that Petitioner "has been

---

[3] The Court notes that it is only if there is no evidence of malingering that the clear and convincing standard applies. *See Smolen*, 80 F.3d at 1281. In the present case, Dr. Sant, an examining physician, noted that there was "some amplification of pain behavior involved during the examination," but also reported that Petitioner "has complaints consistent" with his treating physician Dr. Griffin's findings as they relate to Petitioner's back and hand weakness and pain. (AR 191). The Commissioner's response brief does not contain an argument that Dr. Sant's comment warrants application of a lesser standard, nor does the Court find that this comment changes the standard, especially where Dr. Sant made these comments without having access to x-rays and MRIs of Petitioner that suggest Petitioner's condition "may be more severe than indicated on the plain films." (AR 101). *See, e.g.*, *Davis v. Callahan*, 125 F.3d 670, 673 (8th Cir. 1997) (determining that the medical evidence as a whole supported pain allegations even though one doctor had suggested symptom magnification).

**MEMORANDUM DECISION AND ORDER - 13**

seen by Vocational Rehabilitation in an attempt to retrain, but due to his carpal tunnel syndrome and thoracic outlet syndrome he is unable to perform any manual tasks that require dexterity." (AR 159-60). Dr. Giffin concluded "[i]nformally, given the patient's increasing symptoms along with increasing evidence on films and nerve conduction studies, [that] the patient is a good candidate for Social Security Disability. However, I do recommend formal testing as need[ed] by institutions such as Elks Rehabilitation that may further remove any questions." (AR 160). Dr. Giffin also noted Petitioner's claimed limitations based on the severity of his symptoms. (AR 160).

Petitioner argues that the ALJ erred in rejecting this opinion in finding that Petitioner's pain was not disabling. *Petitioner's Brief*, p. 8 (Docket No. 13). To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If the treating doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it only by providing specific and legitimate reasons that are supported by substantial evidence. *Id*.

While the ALJ thoroughly reviewed and summarized the medical opinions after she made her determination that "claimant does not experience disabling pain," she did not set forth specific reasons for rejecting Dr. Giffen's observations and, instead, relying primarily on the opinions of Dr. Sant, an examining physician, and the state reviewing physicians. On remand, Dr. Giffin's opinion may be disregarded by the ALJ by setting

**MEMORANDUM DECISION AND ORDER - 14**

forth "specific, legitimate, reasons for doing so," as long as the decision is based on "substantial evidence."  *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989) (citations omitted).[4]

## IV.

## CONCLUSION

In conclusion, the reasons given by the ALJ for rejecting Petitioner's pain testimony were not sufficiently specific, clear and convincing.  That standard is one of the most demanding required in Social Security cases.  Although the factors of Petitioner's daily living and ability to work may be appropriately considered in ruling on Petitioner's credibility, *see, e.g., Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 853 (9th Cir. 1996), here, those factors were not sufficiently supported by the record evidence and explained by the ALJ.  Additionally, the opinions of a treating physician may be rejected only when the specific reasons for doing so are set forth.  It is for these reasons that it is necessary to remand this action for further consideration by the ALJ.  Because the Court is remanding for reconsideration of Petitioner's credibility and pain testimony, it is not necessary for the Court to consider Petitioner's other arguments.

---

[4]  Additionally, a treating physician's opinion may be disregarded if it is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 15**

**V**.

**ORDER**

For the reasons set forth above, Petitioner's request for review is GRANTED.  The Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is reversed and this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **December 21, 2006**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge